Beckwith, J.
The plaintiff is the owner of an establishment situated in that part of the city known as East Buffalo, where, as a branch of his works, he has erected, expensive apparatus for the, rendering of dead animals. This establishment is located near the stock yards of the New York Central and Hudson River Railroad Company, where car loads of hogs from the west are continually being delivered. Large numbers of the hogs die during transportation, from suffocation or other causes; the carcasses are sold to the rendering establishments. The plaintiff’s rendering business involves the purchase of these dead hogs, their removal from the railroad stock yards in wagons through the streets to his works, their deposit there on the ground, the lifting and placing them in the large iron rendering tanks, the application, when the tanks are full of steam, the separation and saving of the fatty portions of the animals, which is the special object of the process, the sale of the solid parts, bones, etc., to fertilizer works, the condensed steam and watery portions of the animals being discharged by a drain into Little Buffalo creek, near which the rendering establishment stands. A considerable number of the hogs delivered from the cars, especially in the summer season and warmer months, are in or nearing a state of putrifaction. That portion of the territory of the city of Buffalo where the plaintiff’s works are situated, is largely occupied by the tracks of railroads, by yards for the delivery, yarding and sale of cattle, sheep and hogs brought by railroads from the west, by pork packing establishments, slaughterhouses, fertilizer works, rendering and soap works, and the-like kinds of business' which have there grown up and thriven together in connection with the great railroad stock yards and cattle market of East Buffalo. A large proportion of the inhabitants of East Buffalo are connected with and depend for an industry upon the railroad yards, the live-stock trade, and the various establishments mentioned —but there are hotels and ordinary dwellings and other branches of business also located there. In July, 1886, the board of health of the city of Buffalo adopted a resolution or ordinance of general application declaring the rendering the dead animals a nuisance and dangerous to the public health, and ordering that the rendering of dead animals be immediately suppressed and prohibited within the city of Buffalo.
The ordinance was duly published and became in force, and a copy was served upon the plaintiff. The board of health, ascertaining that the plaintiff, after the enactment of their general regulations, still continued to carry on the business of rendering dead animals, on the 14th day of July, 1886, adopted a special resolution or order declaring *785 the establishments of the plaintiff a nuisance, and ordering the street commissioner to suppress thé business by seizing and removing all dead animals found upon the plaintiff's-premises. The street commissioner was about to put in execution the direction of the board when the plaintiff commenced this action for an injunction.
The plaintiff claims that his rendering establishment or business is not a nuisance or injurious or dangerous to public health, and that the board of health had no power to enact the general ordinance which they claim to have enacted, and, further, that they had no authority to send the street commissioner to take his property and suppress his business.'
1 The board of health has the general power to prescribe such regulations as to the kinds of business that may be carried on within the city as they deem necessary for the preservation of public health. It is police power, vested, in the board by an act of the legislature, and their ordinances made in pursuance of that power are prima facie valid laws binding upon all persons.
The court of appeals, in Polinski v. People (73 N. Y., 69), Andrews, J., says: “That the legislature in the exercise of its constitutional authority may lawfully confer on boards of health the power to enact sanitary ordinances, having the force of law within the districts over which their jurisdiction extends, is not an open question. The power has been repeatedly recognized and affirmed,” citing Metropolitan Board of Health v. Heister (37 N. Y., 664); Health Department v. Adam Knoll (70 N. Y., 530); The People ex rel Cox v. The Justices of Sessions (7 Hun, 214).
In the last named case Judge Daniels says that “the power to enact and enforce ordinances has always formed an essential feature in the creation of municipal corporations, and that the power may be conferred upon the mayor and common council, or the latter body alone, or any other department of the municipal government as may appear to be most just and expedient in the judgment of the legislature. ”
The board of health enacted a regulation* as a sanitary ordinance, forbidding the rendering dead animals within the city Emits. Prima facie the plaintiff was bound to obey this ordinance. The defendant’s counsel claim that it is a legislative act and conclusive, and that the court cannot relieve the plaintiff from obedience. As a general rule the sanitary regulations of the board of health must be obeyed, and the courts will not interfere to restrain the board from putting their ordinances in force. High on Injunctions, § 747.
*786 The propriety of vesting summary power, in some departments of municipal government is apparent on those occacasions when a populous city is visited by pestilence, like the cholera, small-pox, yellow fever or other plague. The power must exist, but a plain abuse of the power is sometimes prevented by the courts and then an injunction is the remedy. Sometimes it is said that regulations established by municipal governments must be reasonable and there have been a large number of cases where the courts have interfered to protect individuals from a municipal ordinance on the ground that the ordinance sought to be enforced was unreasonable. But the exercise of judicial power on that ground is subject to consideration snot now necessary to discuss. “ It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or the state, within which a given structure can be shown to be a nuisance, can, by mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even of the city itself." Miller, J., in Yates v. Milwaukee (10 Wall, 497).
The learned counsel for the plaintiff, on the argument, sought to avail himself of a principle like that declared by Judge Miller. . He contended that neither the city charter nor any statute, nor the common law, makes the rendering of dead animals a nuisance, and that it was incompetent for the board of health to declare the business a nuisance.
But the board of health of the city of Buffalo, by the-charter, are given ample powers, in their discretion, to make regulations concerning the public health. The regulation-they adopted in regard to rendering establishments was a general law, applying to all the inhabitants of the city and prima facie the plaintiff’s duty was to obey it. But notwithstanding his establishment comes within the letter of the ordinance, inasmuch as.it is a place of rendering dead animals, yet he clai'ms that as carried on by him it is not,, in fact a nuisance. There is authority for his right to raise this inquiry by a suit in equity which is as far, I think, as-he would have a right to go in opposition to a general law of the board of health.
Accordingly in this action the court has taken the proofs of the parties upon the question whether the plaintiff’s business of rendering dead hogs, as conducted by him, is or-is not a nuisance or dangerous to the public health. On the part of the plaintiff, persons living in the vicinity, laborers as well as proprietors of other establishments in that neighborhood, and physicians as experts, also have given evidence tending to show that there is nothing connected with the plaintiff’s establishment and business that is deleterious to health.
*787 Much of the evidence, including 'the testimony of medical experts and the medical authorities referred to, tended to show that East Buffalo, the vicinity of these establishments referred to asiflourishing there, like slaughter houses, fertilizer works, rendering establishments, etc., is a veritable sanitarium, and that laborers employed in such establishments are particularly robust and healthy. On the other hand, other witnesses, lay and medical, gave evidence tending to show that a sickening oder comes from the plaintiff’s premises and that Little Buffalo Creek into which drainage is made from his works, is contaminated and rendered offensive to persons living in the vicinity, and especially deleterious to persons already in delicate health.
The testimony left in this state of equipoise would defeat the plaintiff upon the merits of the case, for the board of health being empowered to enact general laws or regulations concerning the public health, and the board having legislated upon the subject and pronounced the rendering of dead animals dangerous to the public health the court cannot interfere. The courts do not interpose to restrain municipal authorities from putting their ordinances in force except where the powers delegated them have been exceeded or where the proofs make it plain and conclusive that the particular building or business establishment in question, is not in reality and in fact, although nominally, within the scope and intent of the ordinance. Weil v. Ricord, 9 C. E. Green, 173.
In this case the defendant’s proofs to the effect that the plaintiff’s establishment is a nuisance, that the drainage therefrom pollutes Little Buffalo creek, and that the public health is endangered by the existence of the plaintiff’s business, is just about as strong, full' and conclusive, as the plaintiff’s proofs to the contrary. Under such circumstances courts of equity do not attempt to restrain municipal authorities from enforcing a regulation, which by statute, they are authorized to make. On the part of the plaintiff it was urged that the court ought to take into consideration that that part of the city where his establishment is placed is largely occupied by slaughter-houses, pork-packing establishments, fertilizer works and "other trades which are connected with the railroad stock yards, existing there; that any contamination of the atmosphere or waters of Little Buffalo creek does not come from his establishment alone; that his business is a useful one; that dead animals from the cars must necessarily be removed and that his manner of disposing of them is as little offensive as any and that his mode of rendering is reduced as nearly as it is possible to inoffensiveness. The law is well- *788 settled that the person who maintains that which is a nuisance, or that which has been lawfully declared a nuisance by competent authority, cannot be protected by the courts upon such ground. Seacord v. People, 10 Western Rep., 915.
Those considerations might properly be presented for consideration by the law-making authorities, the legislature or the board of health. It would be a proper thing for the board of health to consider whether the great number of animals delivered dead by the railroads can be taken care of in any way less detrimental to the public, and whether the delivery of such dead animals within the city should he suffered at all, and if the exigencies of trade require that the practice should not be interfered with,_ whether it is not as well to take care of the carcasses within the city and under the supervision of the board of health and an effective police force, as to send them barely over the city line to be there rendered. It appeared upon the hearing that the plaintiff conducts the business in a cleanly manner and in a way as little offensive as it is possible to conduct it. The principal cause of complaint against his works is the discharge of the liquids from the rendering tanks into the creek. It appeared upon the trial that a sewer was in course of construction by the city, which, upon completion would afford to all those establishments at East Buffalo an outlet for drainage, and that as soon as connections could be made with the sewer there would be no cause for complaint These matters are for the consideration of the board of health, and will doubtless receive fair attention. They are considerations for the legislative authority and do not enable the court to protect from interference a business which competent authority declares to be a nuisance as presently carried on, and which proofs do not clearly establish to be of a contrary character. If the business can be put in a shape not to be a nuisance the aid of the court can • not be asked until the proprietor has put it in that shape. Therefore, upon the merits of the case, the plaintiff is not at this time entitled to a judgment restraining the defendant from enforcing its orders and regulations.
Second. But I think that the plaintiff is entitled to judgment upon a ground relating to procedure, that is to say, while upon the actual character and nature of the rendering business the board of health would seem to have reason for the exercise of its discretionary power to suppress any busi • ness dangerous to the public health, yet in the exercise of that power it must pursue the steps pointed out by the statute. A person maintaining a public nuisance is liable to indictment, and to an action at the instance of a party specially injured. The statute creating the board of health *789 of the city of Buffalo (Charter, title 12), empowers the board to impose penalties or to restrain by injunction any violation of such ordinances. The defendant, the board of health, did not, in this case, institute a criminal proceeding against the plaintiff as it might have done, nor bring an action as authorized, but took upon itself the abatement of the alleged nuisance by sending its agent (Charter, title 2, section 50), to seize and remove all dead animals found upon the plaintiff’s premises. On the 14th day of August, 1886, the board made a special order for the suppression of the plaintiff’s rendering business in pursuance of the power conferred by section 10, subdivision 6 of the charter, which subdivision directs that a copy of the order be served on the occupant of the premises or posted in some conspicuous place on the premises.
A copy of this order was on his premises, but, without such service or posting, the defendant proceeded to suppress his business. But section 11 of title 12 of the charter, provides that ‘ in case of non compliance with any order or regulation which shall have been so served or posted, the said board or its servants or employees, may lawfully enter upon any premises to which said order relates, and suppress or remove the nuisance or other matters in the judgment of said board detrimental to the public health mentioned in said order or regulation.”
It is quite apparent from the proceeding of the board of health, the making of an order on August 14,1886, specially relating to the individual case of the plaintiff, and directing the street commissioner to proceed and abate the alleged nuisance, that the board was endeavoring to exercise the powers and to use the remedies given by section 11 of the charter, and subdivision 6 of section 10. It was a preliminary to its right to enter upon the plaintiff’s premises in person or by the street commissioner as its executive officer, that its special order relating to the plaintiff’s premises should be first served or posted as required by subdivision 6.
A similar statute received such construction in Gould v. City of Rochester (39 Hun, 79), and the correctness of that interpretation of the statute was recognized in the same case by the court of appeals, 105 N. Y , 46; 6 N. Y. State Rep., 503, before the board of health could lawfully proceed to abate the alleged nuisance on the plaintiff’s premises, it was necessary that its special order should be served or posted, and the fair implication is that a reasonable time thereafter should be allowed to the party proceeded against to abate the nuisance himself. The statute authorizing the board, through the street commissioner, as its executive officer, to enter upon premises declared to be a nuisance and abate the nuisance, although a remedial statute which *790 must be fairly construed with regard to effecting its purpose, still its substantial provisions ought to be complied with, and the board having omitted to serve or post the special order, did not get the right to enter with high hand upon the plaintiff’s premises, even for the purpose of abating the nuisance declared to exist there. Not having acquired by the regular steps of the statute, the right to enter, the plaintiff was entitled to an order of injunction. Judgment must, therefore, be ordered for the plaintiff with costs. While thus this cause, which was tried with so much care and labor, seems to be decided upon a technical ground, yet, inasmuch as the right of the board to denounce and suppress in an individual case, and the statutory processes to that end are united, the conclusion is unavoidable.